John T. Jasnoch (SBN 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508

*Counsel for Plaintiff Neal Rosenberg*

[Additional Counsel on Signature Page.]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

NEAL ROSENBERG, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

AEVEX CORP., ROGER WELLS, TODD BOOTH, BRIAN RADUENZ, MADISON DEARBORN PARTNERS, LLC, GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC., and JEFFERIES LLC,

Defendants.

Case No.: '26CV4779 TWR SBC

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Neal Rosenberg ("Plaintiff"), by and through his undersigned counsel, brings this action under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of himself and a class and sub-class of other similarly situated investors against AEVEX Corp. ("Aevex" or the "Company"), Roger Wells ("Wells"), Todd Booth ("Booth"), Brian Raduenz ("Raduenz"), Madison Dearborn Partners, LLC ("Madison"), Goldman Sachs & Co. LLC ("Goldman"), BofA Securities, Inc. ("BofA"), and Jefferies LLC ("Jefferies") (collectively, "Defendants"). Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based on the ongoing investigation conducted by and through his attorneys, which include, among other things, review and analysis of public filings made by Defendants with the U.S. Securities and Exchange Commission ("SEC"); press releases and other statements disseminated by Defendants and other persons; news articles, shareholder communications, and conference calls concerning Defendants' public statements; and other publicly available information such as analyst reports concerning the Company and the industry within which it operates.

## I. NATURE OF ACTION

1. This is a federal securities class action on behalf of a class (the "Class") consisting of all persons and entities other than Defendants who purchased or otherwise acquired Aevex's publicly traded Class A common stock between April 17, 2026 and June 4, 2026, inclusive (the "Class Period"), and a sub-class (the "Sub-Class") consisting of all persons and entities that purchased or otherwise acquired Aevex Class A common stock pursuant or traceable to the registration statement and prospectus (the "IPO Offering Documents") issued in connection with Aevex's April 17, 2026 initial public offering ("IPO"), and were damaged thereby.

2. Plaintiff brings claims against Aevex, three of its officers and directors–Chief Executive Officer ("CEO") Roger Wells, Chief Financial Officer ("CFO")

Todd Booth, Board of Directors ("Board") Chairman Brian Raduenz–as well as Madison, Aevex's controlling private equity owner, and Goldman, BofA, and Jefferies, the IPO's underwriter representatives.

3. Plaintiff's claims are asserted under Securities Act §§11, 12, and 15 and Exchange Act §§10(b) and 20(a).

## II. JURISDICTION AND VENUE

4. The Exchange Act claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5). The Securities Act claims asserted herein arise under §§11, 12, and 15 of the Securities Act (15 U.S.C. §§77k, 77l, and 77o).

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §27 of the Exchange Act (15 U.S.C. §78aa), and §22 of the Securities Act (15 U.S.C. §77v).

6. Venue is proper in this District under 28 U.S.C. §1391(b), §27 of the Exchange Act (15 U.S.C. §78aa), and §22 of the Securities Act (15 U.S.C. §77v). At all relevant times, Aevex was headquartered and conducted business in this District at 440 Stevens Avenue, Suite 150, Solana Beach, CA and substantial acts in furtherance of the acts and omissions charged herein occurred in this District, including the dissemination of materially false and misleading statements to the investing public, including statements that omitted material information.

7. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

## III. PARTIES

### A. Plaintiff

8. Plaintiff Neal Rosenberg, as set forth in the accompanying certification,

purchased Aevex securities in Aevex's IPO pursuant and traceable to the IPO Offering Documents, and at other times during the Class Period, and suffered damages as a result of Defendants' violations of the federal securities laws alleged herein.

**B. Aevex Defendants**

9. Defendant Aevex is incorporated under the laws of Delaware with its principal executive offices located in Solana Beach, CA. Its Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "AVEX." Through its officers, directors, and underwriters, Aevex filed the IPO Offering Documents with the SEC that were materially false, misleading, and/or omitted material information required to be stated therein, in violation of the federal securities laws.

10. Defendant Roger Wells has served as Aevex's CEO since October 2025, and previously served as Aevex's President from April through October 2025. According to the IPO Offering Documents, Wells' compensation is tied to "his achievement of targets set annually in coordination with MDP [Madison]." Wells signed the IPO Offering Documents which, as discussed herein, were materially false and/or contained material misstatements and omissions in violation of the federal securities laws.

11. Defendant Todd Booth has served as Aevex's CFO since September 2025. Booth signed the IPO Offering Documents which, as discussed herein, were materially false and/or contained material misstatements and omissions in violation of the federal securities laws.

12. Defendant Brian Raduenz has served as Aevex's Board Chairman since October 2025, and previously served as Aevex's CEO from 2017 through October 2025. Raduenz signed the IPO Offering Documents which, as discussed herein, were materially false and/or contained material misstatements and omissions in violation of the federal securities laws.

13. Defendants Wells, Booth, and Raduenz are sometimes referred to herein as the "Individual Defendants." The Individual Defendants and Defendant Aevex are sometimes referred to herein as the "Aevex Defendants."

14. The Individual Defendants, because of their positions with Aevex, had the power and authority to control the contents of the Company's reports to the SEC, its press releases, and its other statements to investors, analysts, and other market participants. The Individual Defendants were provided with copies of the IPO Offering Documents alleged herein to contain materially false and/or misleading statements and omissions prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected before they were issued. Because of their positions and access to material non-public information, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that contrary representations that Defendants made were materially false, misleading, and/or contained material omissions. The Individual Defendants are liable for the false and misleading statements and omissions alleged herein.

### C. Defendant Madison

15. Defendant Madison is a Chicago, IL-based private equity firm. Immediately prior to the IPO, Madison owned 100% of Aevex's common stock, and after completion of the IPO, Madison continued to own 77.5% of Aevex's common stock. According to the IPO Offering Documents, Aevex is "a controlled company" by virtue of Madison's outsized ownership of Aevex's common stock, and following the IPO, Madison will have the right to designate "100% of the total number of directors comprising [Aevex's] Board" provided Madison's Class A common stock holdings do not fall below "40% of the total amount of shares of Class A common stock [Madison] owns as of the date of this offering." As a result of Madison's ownership stake, it was able to compel Aevex and the Individual Defendants to

include materially false and/or misleading statements and omissions in the IPO Offering Documents that, as discussed herein, violated the federal securities laws.

**D. Underwriter Defendants**

16. Defendants Goldman, BofA, and Jefferies served as lead underwriters for the IPO and, shortly thereafter, for a secondary public offering ("SPO") and sold millions of shares of Aevex common stock in both offerings, collectively sharing in over $30 million in fees and commissions for soliciting and selling Aevex's shares to the investing public. These Defendants are sometimes referred to herein as the "Underwriter Defendants." Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the IPO Offering Documents as follows:

(a) The Underwriter Defendants are investment banking houses which specialize, *inter alia*, in underwriting offerings of securities. They served as the underwriters of the two offerings at issue in this Action and shared more than $30 million in fees collectively. The Underwriter Defendants determined that in return for their share of the offerings' proceeds, they were willing to merchandize Aevex stock in the offerings. In the bakeoff that determined the composition of the underwriting syndicate, the Underwriter Defendants extolled their ability to market Aevex's stock. Each of the Underwriter Defendants designated personnel to the offerings' working groups, including investment bankers, analysts, associates, and counsel, to market Aevex's common stock, and those personnel worked on and approved the content of Aevex's registration statements, prospectuses, and road show presentations. The Underwriter Defendants arranged a road show before the offerings, during which they, and the Aevex Defendants, met with potential investors and presented highly favorable information about the Company, its operations, and its financial prospects. The

Underwriter Defendants also promoted Aevex's offerings to their bank's own clients and sold shares to online brokerage account holders.

(b) The Underwriter Defendants also demanded and obtained an agreement from Aevex that Aevex would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Aevex had purchased millions of dollars in directors' and officers' liability insurance.

(c) Representatives of the Underwriter Defendants also assisted the Aevex Defendants in planning the offerings and purportedly conducted an adequate and reasonable investigation into the business and operations of Aevex, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the offerings. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Aevex's operations and financial prospects.

(d) In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Aevex's management, top executives, and outside counsel, and engaged in "drafting sessions" in advance of the offerings. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the offerings; (ii) the terms of the offerings, including the price range at which Aevex common stock would be sold; (iii) the language to be used in the registration statements and prospectuses; (iv) what disclosures about Aevex would be made in each offerings' registration statement and prospectus; and (v) what responses would be made to the SEC in connection with its review of the registration statements and prospectuses.

(e) The Underwriter Defendants solicited and sold Aevex's Class A common stock in the IPO to Plaintiff and other members of the Class and Sub-Class.

## IV. SUBSTANTIVE ALLEGATIONS

17. Aevex is a military technology contractor. It designs and manufactures unmanned aerial and surface vehicles and provides AI-enabled intelligence, surveillance, and reconnaissance services.

18. Private equity firm Madison acquired a majority stake in Aevex in 2020 and by the time of Aevex's April 2026 IPO, Madison owned 100% of Aevex's common stock.

19. On April 15, 2026, Defendants filed an amended registration statement with the SEC on Form S-1/A. Five days later, on April 20, 2026, Defendants filed a final prospectus dated April 16, 2026, with the SEC on Form 424B4, which, together with the registration statement, formed the IPO Offering Documents.

20. Each of the IPO Offering Documents state Madison's pre- and post-IPO ownership stake and characterize Aevex as a "controlled company" within the meaning of both the Sarbanes-Oxley Act of 2002 and the NYSE's corporate governance standards.

21. Significantly, the IPO Offering Documents state that Madison would not sell any shares of Aevex Class A common stock in the IPO and that it would be subject to a 180-day "lock-up," meaning it could not sell any Class A common stock—or exchange or convert any other shares like Class B into Class A and then sell those Class A shares—for 180 days after the date of the prospectus, until October 13, 2026. A 180-day lock-up period is typical in an initial public offering and is designed to reassure investors that corporate insiders and significant investors—like Madison—cannot sell their stake in the company and flood the market with shares, which would likely depress the company's stock price.

22. However, Aevex's IPO Offering Documents stated there were "limited exceptions" to the lock-up provision: the 180-day lock-up could be abrogated "with the prior written consent of at least two of the three [underwriter] Representatives"—i.e., two of Defendants Goldman, BofA, and Jefferies.

23. Further, the IPO Offering Documents discussed a "Registration Rights Agreement" that Aevex and Madison "intend to enter into," which, following "our initial public offering and the expiration of any related lock-up period," would allow Madison to "require us to register under the Securities Act shares of Class A common stock directly or indirectly owned by it or issuable to it upon exchange of LLC Units." In other words, Madison could compel the Company to sell Madison's Class A common stock to the public, either by directly selling those shares and/or indirectly by exchanging Madison's "LLC Units" for Class A common stock, but only *after* "the expiration of any related lock-up period."

24. On or about April 17, 2026, Aevex went public via IPO and through the underwriters—including Defendants Goldman, BofA, and Jefferies—ultimately sold 18,400,000 shares of common stock to the public pursuant to the IPO Offering Documents. The Company earned about $346 million from the IPO, while the underwriters earned over $22 million. Madison earned nothing from the IPO but continued to own 77.5% of Aevex's common stock.

25. On information and belief, however, unbeknownst to the investing public at the time of the IPO, Madison, the Aevex Defendants, and the Underwriter Defendants had a pre-arranged plan to waive the 180-day lock-up period to shortly thereafter effectuate an SPO in which Madison would dispose of a significant portion of its Aevex holdings and earn over $200 million, while the Underwriter Defendants would share over $8 million in additional fees.

## V. MATERIALLY FALSE OR MISLEADING STATEMENTS AND OMISSIONS IN VIOLATION OF THE SECURITIES LAWS

26. The IPO Offering Documents contained the following provision explaining Madison's 180-day "lock-up":

> **Lock-Up Agreements**
>
> We, each of our officers and directors and other stockholders and optionholders owning substantially all of our Class A common stock and options or other securities to acquire Class A common stock have agreed that, *without the prior written consent of the Representatives on behalf of the underwriters, we and they will not, subject to limited exceptions, directly or indirectly sell or dispose of any of the shares of Class A common stock or securities convertible into or exchangeable for, or that represent the right to receive, shares of common stock, including LLC Units, during the period from the date of the first public filing of the registration statement on Form S-1 filed in connection with this offering continuing through the date that is 180 days after the date of this prospectus*. The lock-up restrictions and specified exceptions are described in more detail under "Underwriters." Any two of the three Representatives may, in their discretion, release all or any portion of the securities subject to these lock-up agreements. See "Underwriters."

[Emphasis added].

27. Similarly, in discussing the forthcoming "Registration Rights Agreement," the IPO Offering Documents framed any requirement by Madison that Aevex hold another offering as contingent upon the expiration of the 180-day "lock-up" period:

> **Registration Rights Agreement**
>
> We intend to enter into the Registration Rights Agreement with our Principal Stockholder, in connection with this offering. The Registration Rights Agreement will provide our Principal Stockholder certain registration rights whereby, following our initial public offering and *the expiration of any related lock-up period*, our Principal Stockholder can require us to register under the Securities Act shares of Class A common stock directly or indirectly owned by it or issuable to it upon exchange of LLC Units. The Registration Rights Agreement will also provide for piggyback registration rights for our Principal

Stockholder. See "Certain Relationships and Related Party Transactions—Registration Rights Agreement."

[Emphasis added].

28. The above statements in ¶¶26-27 were materially false and/or misleading and contained material omissions at the time they were made. Specifically, the statements conveyed a commitment to follow a 180-day "lock-up" and therefore prevent Madison from selling its Class A common stock or converting or exchanging its Class B or LLC Units into Class A common stock for public sale until at least October 13, 2026, while simultaneously concealing a pre-arranged plan between Madison and the Underwriter Defendants to prematurely abrogate that commitment and allow for an SPO shortly after the IPO. Through that SPO, Madison would earn over $200 million and the Underwriter Defendants would share in a further $8-plus million in fees.

## VI. THE TRUTH IS REVEALED IN TWO CORRECTIVE DISCLOSURES

29. After the market closed on June 1, 2026, just 46 days after the date of the IPO's prospectus, Defendants filed a registration statement with the SEC on Form S-1 announcing the Company's intention to sell eight million more shares of Class A common stock to the investing public via an SPO. Four days later, on June 5, 2026, Defendants filed a final prospectus, dated June 3, 2026, with the SEC on Form 424B4, which, together with the registration statement, formed the SPO Offering Documents.

30. On or about June 3, 2026, Defendants sold eight million shares of Aevex's Class A common stock to the investing public at $27.00 per share through the same underwriters—including Defendants Goldman, BofA, and Jefferies—that effectuated the IPO.

31. According to the SPO Offering Documents, at least two of the Underwriter Defendants had "agreed to waive . . . the lock-up restrictions" and allow

for the sale of Madison's Aevex holdings. This disclosure, coming just over a month after the IPO, revealed the existence of Defendants' undisclosed pre-arranged plan to waive Madison's "lock-up" restrictions.

32. Moreover, of the eight million Class A common stock sold in the SPO, 2,273,843 shares would be sold from Madison's Class A holdings, while the other 5,726,157 Class A shares sold in the offering would be newly issued shares, the proceeds of which Aevex would use to purchase an equivalent number of Madison's other holdings in Aevex, including Madison's Class B common stock and "LLC Units." Therefore, the *entirety* of the SPO's net proceeds—$207.9 million—went to Madison and Aevex earned *zero* from the SPO, while the Underwriter Defendants shared in over $8 million more in fees.

33. The market reacted swiftly and negatively to these disclosures. In reaction to the after-market filing of the June 1, 2026 registration statement, on June 2, 2026, Aevex's Class A common stock fell approximately 16% against the prior day's closing price, wiping out over $700 million in market capitalization. And in response to the pre-market filing of the final prospectus on June 5, 2026, Aevex's common stock fell a further 7% that day, erasing about $200 million more in market capitalization.

## VII. DEFENDANTS' MOTIVE AND OPPORTUNITY TO COMMIT FRAUD PROVIDES ADDITIONAL EVIDENCE OF THEIR SCIENTER

34. Madison and the Underwriter Defendants financially benefited from the above-alleged fraud.

35. As noted above, Madison did not sell any shares in, or earn any proceeds from, the IPO. Upon completion of the IPO, Madison owned over 25 million of Aevex's Class A shares, as well as over 63 million Class B shares, which, along with an equivalent number of LLC Units, could be converted into yet more Class A shares. These outsized shareholdings corresponded to 77.5% of Aevex's

total common stock. Given that Madison could maintain the ability to designate 100% of Aevex's Board provided it continued to own at least 10.05 million Class A shares—"40% of the total amount of shares of Class A common stock it beneficially owns as of the date of this [IPO]"—Madison had millions of shares that it could dispose of without surrendering any control of the Company.

36. In the SPO, Madison directly sold almost 2.3 million shares of Class A common stock through the Underwriter Defendants and received the proceeds from Aevex's sale of a further 5.7 million Class A shares, in exchange for an equivalent number of Madison's Class B common stock and LLC Units. As a result, Madison earned $207.9 million from the SPO and continued to hold over 22.8 million Class A shares.

37. The Underwriter Defendants also profited from the SPO, sharing in $8.1 million in underwriter fees from the sale of Aevex's Class A common stock.

38. The timing of the SPO also supports a strong inference of scienter. The June 1, 2026 registration statement announcing the abrogation of the "lock-up" came just 41 days after the IPO. And two days later, Defendants initiated the SPO.

## VIII. LOSS CAUSATION/ECONOMIC LOSS

39. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic losses suffered by Plaintiff and members of the Class and Sub-Class. During the Class Period, Plaintiff and Class and Sub-Class members purchased or otherwise acquired Aevex common stock at artificially inflated prices caused by Defendants' misconduct. The price of Aevex's Class A common stock declined significantly when Defendants filed the SPO Offering Documents, disclosing the existence of the pre-arranged plan to prematurely abrogate the 180-day "lock-up" provision that prevented Madison from selling its Aevex holdings and revealing that the IPO Offering Documents contained material misstatements and omissions, causing investors' losses.

40. Before the end of the Class Period on June 4, 2026, investors had been unaware that at the time of the IPO, Madison and the Underwriter Defendants had a pre-arranged plan to prematurely abrogate the 180-day "lock-up" provision that prevented Madison from selling its Aevex holdings prior to October 13, 2026, material facts about Aevex that had been known by Defendants.

41. Defendants' misrepresentations and omissions and fraudulent statements, as alleged herein, misrepresented and concealed the true adverse material facts from the market during the Class Period, misleading investors about the permanence of the 180-day "lock-up" restriction and Defendants' intention to allow Madison to prematurely sell, convert, or exchange its Aevex holdings.

42. As alleged in §VI, *supra*, these material facts were revealed to investors on June 1 and 5, 2026, when Aevex filed with the SEC the SPO Offering Documents revealing that the Underwriter Defendants had agreed to prematurely waive the IPO "lock-up" restrictions and permit Madison to sell and exchange $207.9 million-worth of Aevex common stock in an SPO.

43. The market reacted swiftly and negatively to these disclosures, resulting in significant losses for investors.

## IX. CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3): (i) for violations of the Exchange Act on behalf of himself and a Class consisting of all persons and entities that purchased or otherwise acquired Aevex common stock between April 17, 2026 and June 4, 2026, inclusive; and (ii) for violations of the Securities Act on behalf of himself and a Sub-Class consisting of all persons and entities that purchased or otherwise acquired Aevex common stock pursuant or traceable to the IPO Offering Documents issued in connection with Aevex's April 17, 2026 IPO. Excluded from the Class and Sub-Class are Defendants; Aevex's officers and directors at all relevant times; members of their

immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which any of the Defendants have or have had a controlling interest.

45. The members of the Class and Sub-Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aevex common stock was actively traded on the NYSE. While the exact number of Class and Sub-Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are hundreds or thousands of members in the proposed Class and Sub-Class. Throughout the Class Period, millions of shares of Aevex common stock were actively traded on the NYSE (an open and efficient market) under the symbol "AVEX." Record owners and other Class and Sub-Class members may be identified from records maintained by Aevex or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice customarily used in securities class actions.

46. Plaintiff's claims are typical of the claims of Class and Sub-Class members, all of whom were similarly affected by Defendants' wrongful conduct in violation of the federal securities laws, as complained of herein.

47. Plaintiff will fairly and adequately protect the interests of Class and Sub-Class members and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class and Sub-Class.

48. Common questions of law and fact exist as to all members of the Class and Sub-Class and predominate over any questions solely affecting individual members of the Class and Sub-Class. Among the questions of law and fact common to the Class and Sub-Class are:

(a) whether Defendants violated the federal securities laws;

(b) whether statements made in the IPO Offering Documents contained materially false or misleading statements, or omitted to include any material facts required to be stated therein;

(c) whether statements made by Defendants to the investing public and Aevex's shareholders in the IPO Offering Documents omitted or misstated material facts about the permanence of the 180-day "lock-up" period that prevented Madison from prematurely selling any shares of Aevex's Class A common stock, or profiting from the exchange or conversion of any Class B or LLC Units into Class A common stock, absent waiver;

(d) whether the Defendants knew or recklessly disregarded that their statements were false and misleading;

(e) whether the price of Aevex common stock was artificially inflated; and

(f) to what extent Class and Sub-Class members have sustained damages and the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, as the damages suffered by individual Class and Sub-Class members may be relatively small, the expense and burden of individual litigation would make it impossible for them to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## X. APPLICABILITY OF THE FRAUD ON THE MARKET AND *AFFILIATED UTE* PRESUMPTIONS OF RELIANCE (AS TO CLAIMS BROUGHT UNDER THE EXCHANGE ACT)

50. The market for Aevex common stock was open, well developed, and efficient at all relevant times. As a result of Defendants' materially false or misleading statements and material omissions, Aevex common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's common stock, relying on the integrity of the market price of such securities and on publicly available

market information relating to Aevex. Plaintiff and Class members have been damaged thereby.

51. During the Class Period, the artificial inflation of the value of Aevex common stock was caused by the material misrepresentations and omissions alleged in this Complaint, thereby causing the damages sustained by Plaintiff and other Class members. As alleged herein, during the Class Period, Defendants made, or caused to be made, materially false and/or misleading statements and omissions about the permanence of the 180-day "lock-up" period that prevented Madison from prematurely selling its Aevex holdings absent waiver, causing the price of the Company's common stock to be artificially inflated at all relevant times. When the truth was disclosed and/or materialized, it drove down the value of the Company's common stock, causing Plaintiff and other Class members that had purchased or otherwise acquired Aevex common stock at artificially inflated prices to be damaged as a result.

52. At all relevant times, the market for Aevex common stock was efficient for the following reasons, among others:

(a) Aevex common stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) as a regulated issuer, Aevex filed periodic public reports with the SEC and/or the NYSE;

(c) Aevex regularly communicated with public investors via established market-communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Aevex was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms and were made publicly available.

53. Based on the foregoing, during the Class Period, the market for Aevex common stock promptly digested information regarding the Company from all publicly available sources and reflected such information in the price of Aevex common stock. Under these circumstances, the market for Aevex common stock was efficient during the Class Period and, therefore, investors' purchases and acquisitions of Aevex common stock at artificially inflated market prices give rise to a Class-wide presumption of reliance under the fraud-on-the-market doctrine.

54. A Class-wide presumption of reliance is also appropriate as to the Exchange Act claims asserted in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions, which concealed throughout the Class Period, the undisclosed information set forth herein, including in §§IV & V, *supra*.

55. Because the Exchange Act claims asserted in this action involve Defendants' failure to disclose and their omission of material adverse information regarding the permanence of the 180-day "lock-up" period that prevented Madison from prematurely selling its Aevex holdings absent waiver—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld were material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here with respect to the Exchange Act claims

asserted. It is further noted that there is no reliance requirement at all for the separate Securities Act claims being asserted on behalf of the Sub-Class.

## XI. NO SAFE HARBOR

56. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the statements alleged to be false or misleading herein that relate to then-existing facts and conditions, nor does it apply to any material omissions alleged herein.

57. To the extent that statements alleged to be false or misleading might be characterized as forward-looking, the statutory safe harbor also does not apply to such statements because they were not sufficiently identified as "forward-looking statements" when made; there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements; and the speaker had actual knowledge that the forward-looking statements were materially false or misleading at the time each such statement was made, and/or the forward-looking statement was authorized or approved by an executive officer of Aevex, Madison, or the Underwriter Defendants who knew that the statement was false, misleading, or omitted relevant information when made.

## XII. CAUSES OF ACTION

### A. Securities Act Claims

**<u>COUNT I</u>**
**Violation of §11 of the Securities Act**
**(Against All Defendants)**

58. Plaintiff realleges every allegation contained above as if fully alleged in this Count, but only does so to the extent, however, that such allegations do not allege fraud, scienter, or an intent by Defendants to defraud Plaintiff or the Sub-Class members.

59. This Count is based on Defendants' strict liability and/or negligence under §11 for any false or materially misleading statements in the IPO Offering

Documents, or any omissions of material fact required to be stated therein. This Count does not sound in fraud, and any allegations of knowing or reckless misrepresentations or omissions in the IPO Offering Documents are excluded from this Count, except that any challenged statements of opinion or belief are alleged to have been materially false statements of opinion or belief when made at the time of the IPO.

60. This Count is asserted against Defendants for violation of §11 of the Securities Act, 15 U.S.C. §77k, on behalf of all persons and entities that purchased or otherwise acquired Aevex's Class A common stock pursuant or traceable to the IPO Offering Documents issued in connection with Aevex's April 17, 2026 IPO.

61. As alleged in §V, *supra*, the IPO Offering Documents contained false and/or misleading statements and omissions of material fact.

62. As an issuer of the registered securities, Aevex is strictly liable for the false and misleading statements of material fact in, and material omissions from, the IPO Offering Documents as alleged in this Count.

63. To the extent that any Defendant may later seek to interpose or plead an affirmative "due diligence" defense to liability under the relevant provisions of §11 of the Securities Act, none of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the IPO Offering Documents were accurate and complete in all material respects. Had they exercised reasonable care, they would have known of the material misstatements and omissions alleged in this Count. As stated in the immediately preceding paragraph, inasmuch as Aevex was the issuer of the securities at issue under this Count, Aevex is strictly liable for any false and misleading statements of material fact in, and material omissions from, the IPO Offering Documents as alleged herein, and therefore has no "due diligence" defense to the claims asserted under this Count.

64. The Sub-Class members did not know, nor in the exercise of reasonable diligence could they have known, that the IPO Offering Documents contained false and/or misleading statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements identified above not misleading when they purchased or otherwise acquired Aevex Class A common stock pursuant or traceable to the IPO Offering Documents. As a direct and proximate result of the acts and omissions of the Defendants named in this Count in violation of the Securities Act, the Sub-Class suffered substantial damages in connection with its purchase and/or acquisition of Aevex's Class A common stock sold through the IPO.

65. This claim is brought within one year of discovery of the materially false and/or misleading statements and omissions in the IPO Offering Documents and within three years of their effective dates.

66. By reason of the foregoing, the Defendants named in this Count are liable under §11 of the Securities Act to the members of the Sub-Class who purchased or otherwise acquired Aevex's Class A common stock pursuant or traceable to the IPO Offering Documents.

## COUNT II
## Violation of §12 of the Securities Act
## (Against All Defendants)

67. Plaintiff realleges every allegation contained above as if fully alleged in this Count, but only does so to the extent, however, that the allegations do not allege fraud, scienter, or the intent of Defendants to defraud Plaintiff or the Sub-Class.

68. This Count is based on Defendants' strict liability and/or negligence under §12 for any materially false and/or materially misleading statements in the IPO Offering Documents, or any omissions of material fact required to be stated therein. This Count does not sound in fraud, and any allegations of knowing or reckless misrepresentations or omissions in the IPO Offering Documents are

excluded from this Count, except that any challenged statements of opinion or belief are alleged to have been materially false statements of opinion or belief when made at the time of the IPO.

69. This cause of action is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of Plaintiff and the Sub-Class, against all Defendants on behalf of all persons and entities that purchased or otherwise acquired Aevex's Class A common stock pursuant or traceable to the IPO Offering Documents issued in connection with Aevex's April 17, 2026 IPO.

70. As alleged in §V, *supra*, the IPO Offering Documents contained false and/or misleading statements and omissions of material fact.

71. As an issuer of the registered securities, Aevex is strictly liable for the materially false and/or misleading statements and omissions of material fact in the IPO Offering Documents as alleged in this Count.

72. To the extent that any Defendant may later seek to interpose or plead an affirmative "due diligence" defense to liability under the relevant provisions of §12 of the Securities Act, none of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the IPO Offering Documents were accurate and complete in all material respects. Had they exercised reasonable care, they would have known of the material misstatements and omissions alleged in this Count. As stated in the immediately preceding paragraph, inasmuch as Aevex was the issuer of the securities at issue under this Count, Aevex is strictly liable for any materially false and/or misleading statements and omissions in the IPO Offering Documents as alleged herein and therefore has no "due diligence" defense to the claims asserted under this Count.

73. Sub-Class members did not know, nor in the exercise of reasonable diligence could have known, that the IPO Offering Documents contained materially false and/or misleading statements and omissions of material fact when they

purchased or otherwise acquired Aevex's Class A common stock. As a direct and proximate result of the acts and omissions of the Defendants named in this Count in violation of the Securities Act, the Sub-Class suffered substantial damages in connection with its purchase and/or acquisition of Aevex's Class A common stock sold through the IPO.

74. This claim is brought within one year of discovery of the materially false and/or misleading statements and omissions in the IPO Offering Documents and within three years of the effective date of the IPO.

75. By reason of the foregoing, the Defendants named in this Count are liable under §12 of the Securities Act to the members of the Sub-Class who purchased or otherwise acquired Aevex's Class A common stock pursuant or traceable to the IPO Offering Documents.

## COUNT III
## Violation of §15 of the Securities Act
## (Against Madison and the Individual Defendants)

76. Plaintiff realleges every allegation contained above as if fully alleged in this Count, only to the extent, however, that the allegations do not allege fraud, scienter, or the intent of the Defendants to defraud Plaintiff or the Sub-Class.

77. This Count does not sound in fraud, and any allegations of knowing or reckless misrepresentations or omissions are specifically excluded from this Count, except that any challenged statements of opinion or belief are alleged to have been materially untrue statements of opinion or belief when made at the time of the IPO.

78. This Count is asserted against Madison and the Individual Defendants for violations of §15 of the Securities Act, 15 U.S.C. §77o, on behalf of all persons and entities that purchased or otherwise acquired Aevex's Class A common stock pursuant or traceable to the IPO Offering Documents issued in connection with Aevex's April 17, 2026 IPO.

79. Aevex is strictly liable under §§11 and 12 for materially false and/or misleading statements and omissions of material fact in its April 17, 2026 IPO Offering Documents.

80. As Aevex's officers or directors, the Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act. By reason of their positions of control and authority as officers or directors of Aevex, the Individual Defendants had the power and authority to direct the management and activities of the Company and its employees, and to cause the Company to make or issue the materially misleading, or incomplete statements in the IPO Offering Documents, as alleged in this Count.

81. As more fully described above, the Individual Defendants caused Aevex to conduct the IPO and signed the Offering Documents pursuant to which the IPO was conducted. Moreover, in their capacities as senior corporate officers of the Company, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and in the IPO. As a result of the foregoing, the Individual Defendants, together and individually, were controlling persons of Aevex within the meaning of §15 of the Securities Act.

82. Before the IPO, Madison owned 100% of Aevex's common stock and had the ability to influence Aevex's policies and management by its voting and dispositive control over Aevex at all relevant times by securities ownership and pre-IPO agreements. Therefore, Madison was also a controlling person of the Company within the meaning of §15 of the Securities Act. By reason of its position of control and authority over Aevex, Madison had the power and authority to direct the management and activities of the Company and its employees, and to cause the Company to make or issue the materially misleading, or incomplete statements in the IPO Offering Documents, as alleged in this Count.

83. By virtue of the conduct alleged in this Complaint, Madison and the Individual Defendants are liable for Aevex's aforesaid violations of §§11 and 12,

and are liable to members of the Sub-Class who purchased or otherwise acquired Aevex's Class A common stock pursuant or traceable to the IPO Offering Documents.

**B. Exchange Act Claims**

**COUNT IV**
**Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder (Against All Defendants)**

84. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein. This claim is asserted against Defendants for violations of §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, on behalf of all persons and entities that purchased or otherwise acquired Aevex's Class A common stock between April 17, 2026 and June 4, 2026, inclusive.

85. Throughout the Class Period, Defendants: (i) knowingly, or with reckless disregard, deceived the investing public, including Plaintiff and Class members, as alleged herein; (ii) artificially inflated and/or maintained the market price of Aevex common stock; and (iii) caused Plaintiff and Class members to purchase or otherwise acquire Aevex's Class A common stock at artificially inflated prices.

86. Each of the listed Defendants here, in violation of §10(b) of the Exchange Act and Rule 10b-5(b), made, and/or substantially participated in the making of, false and/or misleading statements of material facts and omitted to state material facts necessary to make the statements not misleading, which operated as a fraud and deceit upon Plaintiff and the Class, in an effort to create or maintain an artificially inflated price of Aevex's Class A common stock during the Class Period. Defendants' material misrepresentations and omissions are alleged in §V, *supra*.

87. As a result of their making and/or substantially participating in the creation of affirmative statements to the investing public, Defendants had a duty to

promptly disseminate truthful information that would be material to investors in compliance with applicable laws and regulations.

88. As officers, directors, owner, underwriters, and controlling persons of a publicly held Company, whose common stock is registered with the SEC, pursuant to the Exchange Act, traded on the NYSE, and governed by the provisions of the federal securities laws, Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's current and future share offerings, financial condition and performance, growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially false or misleading, so that the market price of the Company's publicly traded securities would be based upon truthful and accurate information.

89. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, made, or substantially participated in, the creation and/or dissemination of false or misleading statements of material fact, as set forth herein, or with reckless disregard failed to ascertain and disclose truthful facts, even though such facts were available to them.

90. The facts alleged herein give rise to a strong inference that each Defendant acted with scienter. Defendants each knew, or recklessly disregarded, that the IPO Offering Documents' statements set forth in §V, *supra*, contained material misrepresentations and omissions for the reasons set forth herein.

91. By virtue of Madison's and the Individual Defendants' positions of management and control within Aevex, and the Underwriter Defendants' involvement in the creation of the IPO Offering Documents, roadshow, investor outreach, and public sale of Aevex's Class A common stock, they had access to undisclosed adverse information about the Company and its current and future offerings, business, operations, operational trends, finances, and present and future

business prospects. Defendants would ascertain such information through the Company's internal corporate documents; conversations and connections with corporate officers and employees; attendance at conferences and management and Board of Directors meetings, including committees thereof; and reports and other information provided to them in connection with their roles and duties within Aevex and in effectuating the IPO.

92. The Defendants were aware of, or recklessly disregarded, that material misrepresentations and omissions were being made regarding the Company, and approved or ratified such statements in violation of the federal securities laws.

93. As a result of the Defendants' dissemination of the materially false or misleading information, and their failure to disclose material facts, as alleged herein, the market price of Aevex's Class A common stock was artificially inflated throughout the Class Period. Unaware that the market price of Aevex's Class A common stock was artificially inflated, relying directly or indirectly on the false and/or misleading statements and omissions made in the IPO Offering Documents, or relying upon the integrity of the market in which Aevex's Class A common stock traded, and in the absence of material adverse information that was known, or recklessly disregarded by Defendants, but not disclosed to the public, Plaintiff and Class members purchased or otherwise acquired Aevex's Class A common stock at artificially inflated prices.

94. Had Plaintiff and the other Class members known the truth regarding the permanence of the 180-day "lock-up" period that prevented Madison from prematurely selling any shares of Aevex's Class A common stock, or profiting from the exchange or conversion of any Class B or LLC Units into Class A common stock, absent waiver, which were not disclosed by Defendants, Plaintiff and other Class members would not have purchased or otherwise acquired Aevex's Class A common stock during the Class Period, or, if they had acquired such securities, they would not have done so at the artificially inflated prices which they paid.

95. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their respective purchases and sales of Aevex's Class A common stock during the Class Period, when the artificial inflation in the price of such securities dissipated, as the truth regarding Defendants' conduct was revealed and/or the undisclosed risks materialized, causing the price of Aevex's Class A common stock to decline, resulting in economic losses to Plaintiff and the Class.

96. By reason of the foregoing, Defendants violated §10(b) of the Exchange Act and Rule 10b-5(b), promulgated thereunder, and are liable to Plaintiff and the Class for damages suffered in connection with their purchase or acquisition of Aevex's Class A common stock during the Class Period.

**COUNT V**
**Violation of §20(a) of the Exchange Act**
**(Against Madison and the Individual Defendants)**

97. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein. This claim is asserted against Madison and the Individual Defendants for violations of §20(a) of the Exchange Act, 15 U.S.C. §78t(a), on behalf of all persons and entities that purchased or otherwise acquired Aevex's Class A common stock between April 17, 2026 and June 4, 2026, inclusive.

98. Aevex is a primary violator of §10(b) and Rule 10b-5, promulgated thereunder.

99. As officers or directors of Aevex, the Individual Defendants were controlling persons of the Company within the meaning of §20(a) of the Exchange Act. By reason of their positions of control and authority as officers and/or directors of Aevex, the Individual Defendants had the power and authority to direct the management and activities of the Company and its employees, and to cause the Company to engage in the wrongful conduct complained of in this Complaint.

100. As more fully described above, in their capacities as senior corporate officers of the Company, the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company and are therefore presumed to have had the power to control or influence, and during the Class Period did exercise that power to control and influence, the conduct giving rise to the violations of the Exchange Act alleged herein. The Individual Defendants prepared, or were responsible for preparing, the Company's IPO Offering Documents and controlled Aevex and each of its employees. As a result of the foregoing, the Individual Defendants, together and individually, were controlling persons of Aevex within the meaning of §20(a) of the Exchange Act.

101. Prior to the IPO, Madison owned 100% of Aevex's common stock and had the ability to influence Aevex's policies and management by their voting and dispositive control over Aevex at all relevant times by securities ownership and pre-IPO agreements. By reason of its position of control and authority over Aevex, Madison had the power and authority to direct the management and activities of the Company and its employees, and to cause the Company to make or issue the materially misleading, or incomplete statements in the IPO Offering Documents, as alleged in this Count. Therefore, Madison was also a controlling person of the Company within the meaning of §20(a) of the Exchange Act.

102. Madison and the Individual Defendants were able to, and did, control the content of the IPO Offering Documents and were provided with copies of the IPO Offering Documents prior to their issuance and had the ability and/or opportunity to prevent the issuance of such documents or cause them to be corrected. Accordingly, Madison and the Individual Defendants are responsible for the accuracy of the Company's IPO Offering Documents.

103. By virtue of their positions as controlling persons of Aevex, and by reason of the conduct described in this Count, Madison and the Individual Defendants are liable pursuant to §20(a) of the Exchange Act for controlling a primary violator of the Exchange Act. As a direct and proximate result of Madison's and the Individual Defendants' wrongful conduct, Plaintiff and other Class members

suffered damages in connection with their purchases or acquisitions of Aevex's Class A common stock during the Class Period.

**XIII. PRAYER FOR RELIEF**

104. WHEREFORE, Plaintiff, individually and on behalf of the Class and Sub-Class, prays for relief and judgment as follows:

A. Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class and Sub-Class defined herein;

B. Awarding compensatory damages in favor of Plaintiff and all other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' violations of the Exchange Act, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

C. Awarding compensatory damages in favor of Plaintiff and all other Sub-Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' violations of the Securities Act, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

D. Awarding Plaintiff and the Class and Sub-Class their reasonable costs and expenses incurred in this action, including counsel and expert fees; and

E. Awarding such other and further relief as the Court may deem just and proper.

**XIV. JURY DEMAND**

105. Plaintiff demands a trial by jury.

DATED: August 20, 2026

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ John T. Jasnoch*

John T. Jasnoch (SBN 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508

Thomas L. Laughlin, IV (*pro hac vice* forthcoming)
Jeffrey P. Jacobson (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Ave, 24th Floor
New York, NY 10169
Tel.: 212-223-6444
Fax: 212-223-6334

*Counsel for Plaintiff Neal Rosenberg*

**CRIDEN & LOVE, P.A.**
Michael E. Criden (*pro hac vice* forthcoming)
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Tel.: 305-357-9000
mcriden@cridenlove.com

*Additional Counsel for Plaintiff Neal Rosenberg*